**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| MICHELLE NICHOLE VAUGHN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21CV1 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Michelle Nichole Vaughn, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Brief); Docket Entry 13 (Defendant's Memorandum); Docket Entry 14 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 242-52), alleging disability onset dates of July 1, 2012 (see Tr. 242) and January 1, 2013 (see Tr. 244), respectively.[2]  Upon denial of those applications initially (Tr. 89-122, 158-66) and on reconsideration (Tr. 123-57, 172-80), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 183-84).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 36-88.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 12-29.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 241, 350-51), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1.  [Plaintiff] meets the insured status requirements of the [] Act through June 30, 2017.
>
> 2.  [Plaintiff] has not engaged in substantial gainful activity since July 1, 2012, the alleged onset date.
>
> . . .
>
> 3.  [Plaintiff] has the following severe impairments: cervical spine degenerative disc disease, bilateral

---

[2] Notwithstanding Plaintiff's alleged onset date for her SSI claim of January 1, 2013, Plaintiff lacked eligibility for SSI benefits until her application date of March 26, 2018 (see Tr. 244).  See 20 C.F.R. § 416.202 (explaining that a claimant remains ineligible for SSI benefits until date he or she files SSI application); 20 C.F.R. § 416.501 (stating that a claimant may not receive SSI benefits for any period that predates first month he or she satisfies eligibility requirements, which cannot precede application date).

carpal tunnel syndrome and DeQuervain's tenosynovitis, diabetes mellitus, obesity, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except she would be limited to frequent bilateral upper extremity handle, finger, and feel; frequent stoop, kneel, crouch, crawl, balance, and climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent exposure to hazards such as unprotected heights and dangerous machinery; and frequent exposure to extremes of heat or cold. Additionally, [Plaintiff] would be limited to simple, routine tasks but is able to maintain concentration, persistence, or pace for periods of at least two hours at a time, perform activities within a schedule, maintain regular attendance, and complete a normal workday and work week; and, occasional interaction with the general public.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from July 1, 2012, through the date of this decision.

3

(Tr. 18-29 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a

4

refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is

---

[3] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[6]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "the ALJ [] commit[ted] a reversible error" by "fail[ing] to identify which exertional capacities of light work [Plaintiff] is able to perform" (Docket Entry 11 at 4 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 14 at 3-5);

2) "[t]he ALJ [] committed a reversible error [under <u>Dowling v. Commissioner of Soc. Sec. Admin.</u>, 986 F.3d 377, 387-88 (4th Cir. 2021)] by relying on an incorrect regulatory framework to assess [Plaintiff]'s [RFC]" (Docket Entry 11 at 12 (bold font and single-spacing omitted));

3) "the ALJ commit[ted] a reversible error by failing to provide a logical explanation for the [RFC] assessment" (<u>id.</u> at 14 (bold font and single-spacing omitted));

---

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

4) "[t]he ALJ [] committed a reversible error" by "discount[ing Plaintiff]'s statements about the severity and limiting effects of her medical impairments solely because of a lack of substantiating objective medical evidence" (id. at 20 (bold font and single-spacing omitted); see also Docket Entry 14 at 5-7); and

5) "[Plaintiff]'s major depressive disorder [('MDD')], generalized anxiety disorder [('GAD')], and posttraumatic stress disorder [('PTSD')] are medically determinable impairments that result in entirely subjective symptoms[, and she] is therefore entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of her mental disorder symptoms" (Docket Entry 11 at 23 (bold font and single-spacing omitted); see also Docket Entry 14 at 7-10).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 6-22.)

## 1. Exertional Requirements of Light Work

Plaintiff's first issue on review contends that "the ALJ [] commit[ted] a reversible error" by "fail[ing] to identify which exertional capacities of light work [Plaintiff] is able to perform." (Docket Entry 11 at 4 (bold font and single-spacing omitted); see also Docket Entry 14 at 3-5.) In particular, Plaintiff maintains that Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual

9

Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p"), required the ALJ to evaluate Plaintiff's "ability to perform each of the [seven] exertional strength functions of [an exertional] category [of work, i.e., sitting, standing, walking, lifting, carrying, pushing, and pulling,] 'and whether [Plaintiff] is capable of doing the full range of work contemplated by the exertional level.'" (Docket Entry 11 at 5 (quoting SSR 96-8p, 1996 WL 374184, at *3).) Plaintiff points out that, although the ALJ here found that Plaintiff could perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), "[i]t is indisputable that the ALJ failed to expressly identify in the RFC assessment how much weight [Plaintiff] c[ould] lift and carry or how many hours per day she c[ould] stand and walk." (Docket Entry 11 at 5-6 (citing Tr. 22).)

According to Plaintiff, Sections 404.1567(b) and 416.967(b) "define[] different categories of light work" (id. at 6):

> [T]he first sentence of [the sections in question] defines a category of light work that requires lifting up to 20 pounds, frequent lifting or carrying up to 10 pounds, and standing or walking for 6 hours per day.
>
> Sentence two defines a second category of light work that requires "a good deal of standing or walking"[] without the lifting and carrying requirements of category one.
>
> Sentence two also defines a third category of light work that requires sitting "most of the time with some pushing of arm or leg controls," without the lifting, carrying, standing, or walking requirements of categories one and two.

10

> Finally, sentence three identifies a fourth category of light work referred to as "a full or wide range of light work" that requires all of the exertional functions of the first three categories.

(Id. at 7 (quoting 20 C.F.R. §§ 404.1567(b) and 416.967(b)).) Plaintiff posits that the ALJ's statements (A) that Plaintiff "'is restricted to less than a full range of light work" (id. at 8 (quoting Tr. 27)) and (B) that, "[i]f [Plaintiff] had the [RFC] to perform the full range of light work, a finding of not disabled would be directed by Medical-Vocational Rule 202.21[, but Plaintiff]'s ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations'" (id. (quoting Tr. 29)), "indicate that [Plaintiff] is unable to perform the fourth category of light work, a full or wide range" (id.). In Plaintiff's view, "[t]he hearing decision [erroneously] provides no indication which of the[] three [remaining] ranges of light work [Plaintiff] is able to perform" (id. at 9 (citing Tr. 22)). Those contentions miss the mark.

As an initial matter, Plaintiff offers no support for her novel contention that Sections 404.1567(b) and 416.967(b) "define[ four] different categories of light work" (see Docket Entry 11 at 6; see also Docket Entry 14 at 3), and the undersigned's research located no binding or persuasive authority supporting Plaintiff's interpretation of those regulatory provisions. Moreover, the applicable regulations identify only the five overarching exertional levels of work, see 20 C.F.R. §§ 404.1567, 416.967 ("To

11

determine the physical exertion requirements of work in the national economy, [the SSA] classif[ies] jobs as sedentary, light, medium, heavy, and very heavy."), and do not describe any further subcategories of light work, see id. Accordingly, when the ALJ found that Plaintiff remained capable of "light work as defined in [Sections] 404.1567(b) and 416.967(b)," and then described, following the word "except," an array of manipulative, postural, environmental and mental restrictions, but did not include additional limitations on Plaintiff's abilities to lift, carry, stand, or walk (Tr. 22 (emphasis added)), the ALJ clearly found that Plaintiff remained capable of the full exertional requirements of light work, i.e., lifting/carrying 20 pounds occasionally and 10 pounds frequently, as well as standing and walking each for up to six hours in an eight-hour day, see 20 C.F.R. §§ 404.1567(b), 416.967(b).[7]

Plaintiff also misconstrues the significance of the ALJ's statements that Plaintiff "'is restricted to less than a full range of light work" (Docket Entry 11 at 8 (quoting Tr. 27)) and that, "[i]f [Plaintiff] had the [RFC] to perform the full range of light work, a finding of not disabled would be directed by Medical-

---

[7] Indeed, no basis exists to assume the ALJ found Plaintiff capable of less than the full exertional range of light work – e.g., no treating or non-examining medical source of record opined that Plaintiff's impairments reduced her lifting/carrying ability to less than 20 pounds occasionally and 10 pounds frequently, or her abilities to stand and walk to fewer than six hours in an eight-hour workday. (See Tr. 100-01, 118-19, 134-35, 149-50 (state agency medical consultants' opinions that Plaintiff remained capable of lifting/carrying 50 pounds occasionally and 25 pounds frequently, as well as standing/walking each for up to six hours in an eight-hour workday).)

Vocational Rule 202.21[, but Plaintiff]'s ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations'" (id. (quoting Tr. 29)). In that regard, Plaintiff disagrees with the Commissioner's assertion that the ALJ's use of "the phrase 'less than a full range [of light work]' accounts for the additional manipulative, postural, environmental, and mental limitations set forth in the RFC" (Docket Entry 13 at 11), contending that the phrase "'full range of light work' has a distinct legal meaning." (Docket Entry 14 at 4.) According to Plaintiff, "[Sections] 404.1567(b) and 416.967(b) define 'a full or wide range of light work' as work that requires 'the ability to do substantially all of' the exertional activities cited in those regulations, i.e., lifting up to 20 pounds, frequent lifting or carrying 10 pounds, doing a good deal of standing and walking, etc." (Id.) Plaintiff maintains that, because "[t]he ALJ used precisely defined legal terminology when he stated that [Plaintiff wa]s 'restricted to less than a full range of light work[,]' . . . the ALJ's use of the phrase 'less than a full range of light work' can only mean that [Plaintiff wa]s restricted from performing substantially all of those exertional requirements." (Id. (emphasis added).)

Plaintiff's argument on this front relies upon an unreasonably narrow interpretation of the phrase "less than a full range of light work" (Tr. 27) as applying only to the exertional

requirements of light work. The SSA's policies make abundantly clear that both exertional and non-exertional limitations can reduce the range of work available at the light level of exertion. See Social Security Ruling 83-14, Titles II and XVI: Capability to Do Other Work - The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments, 1983 WL 31254, at *1 (1983) ("SSR 83-14") ("Nonexertional impairments may or may not significantly narrow the range of work a person can do." (emphasis added)). Indeed, SSR 83-14 cautions that "many unskilled light jobs . . . require gross use of the hands to grasp, hold, and turn objects," SSR 83-14, 1983 WL 31254, at *4, i.e., "handling," see Social Security Ruling 83-15, Titles II & XVI: Capability to Do Other Work - The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, at *7 (1985) ("SSR 85-15") (defining "handling" as "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands"), and the ALJ here limited Plaintiff to "frequent bilateral upper extremity handl[ing]" (Tr. 22). In turn, SSR 85-15 characterizes handling as an "activit[y] required in almost all jobs" and notes that "[s]ignificant limitations of . . . handling . . . may eliminate a large number of occupations a person could otherwise do . . ., [such that] the assistance of a V[E] may be needed to determine the effects of the limitations."

14

SSR 85-15, 1985 WL 56857, at *7 (emphasis added); see also SSR 83-14, 1983 WL 31254, at *4 ("Any limitation on [handling] must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work." (emphasis added)).[8] Here, the ALJ appropriately called upon a VE to assess the impact of the handling and other non-exertional limitations in the RFC on the light unskilled occupational base. (See Tr. 81-85.) Accordingly, as the ALJ's use of the phrase "less than a full range of light work" (Tr. 27) clearly referenced the non-exertional limitations in the RFC, the Court can trace the path of the ALJ's decision-making and conclude that the ALJ found Plaintiff capable of the full exertional requirements of light work.

In light of the foregoing analysis, Plaintiff's first assignment of error falls short.

## 2. Error under Dowling

Next, Plaintiff maintains that "[t]he ALJ [] committed a reversible error [under Dowling] by relying on an incorrect regulatory framework to assess [Plaintiff]'s [RFC]." (Docket Entry

---

[8] Plaintiff attempts to compartmentalize the non-exertional limitations in the RFC by arguing that each one, considered separately, would not "significantly reduce the occupational base of light work." (Docket Entry 11 at 10.) As discussed above, however, because the ALJ's limitation to frequent handling alone could have materially reduced the range of available light work and therefore warranted careful consideration as to the impact on the light unskilled occupational base, see SSR 85-15, 1985 WL 56857, at *7; see also SSR 83-14, 1983 WL 31254, at *4, then, taken together, all of the non-exertional limitations in the RFC certainly warranted such an approach.

15

11 at 12 (bold font and single-spacing omitted).)  According to Plaintiff, the Dowling court "held that, among other errors, an ALJ 'relied on an incorrect regulatory framework when he assessed [the claimant]'s RFC,'" because "[t]he ALJ [neither] cite[d] to 20 C.F.R. § 416.945, the regulation that 'explains how ALJ's [sic] should assess a claimant's RFC,' [n]or SSR 96-8p, the ruling 'that provides guidance on how to properly evaluate an RFC,'" but rather based the "'RFC determination . . . entirely on [Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p")] and [Social Security Ruling 16-3p, Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p")], which set out the process ALJs use to evaluate the intensity and persistence of [a claimant's] symptoms.'"  (Docket Entry 11 at 12-13 (quoting Dowling, 986 F.3d at 387) (internal quotation marks omitted).)  Plaintiff notes that the court in Dowling found that, because "'an RFC assessment is a separate and distinct inquiry from a symptom evaluation, [] the ALJ erred treating them as one and the same.'"  (Id. at 13 (quoting Dowling, 986 F.3d at 387).)  Plaintiff maintains that, "[l]ike the ALJ in *Dowling*, the ALJ in this case failed to cite the regulatory provisions regarding assessment of RFC, . . . [but i]nstead . . . cited 20 C.F.R. §§ 404.1529 and 416.929 regarding evaluation of

16

symptoms, 20 C.F.R. §§ 404.1527 and 416.927 regarding evaluation of medical opinions, and SSR 16-3p regarding evaluation of symptoms." (Id. at 13-14 (citing Tr. 22).) For the reasons explained below, Plaintiff's arguments fail as a matter of law.

Contrary to Plaintiff's arguments, the ALJ here did cite to the correct standards governing the assessment of RFC. Although Plaintiff focuses on one page of the ALJ's decision to assert that the ALJ failed to cite the proper standards (see Docket Entry 11 at 12-14 (citing Tr. 22)), Plaintiff ignores the following recitation by the ALJ of the appropriate standards:

> Before considering step four of the [SEP], the [ALJ] must first determine [Plaintiff]'s [RFC] (20 CFR 404.1520(e) and 416.920(e)). An individual's [RFC] is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the [ALJ] must consider all of [Plaintiff]'s impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

(Tr. 17 (emphasis added).) In light of the above-quoted paragraph, the ALJ did not err under Dowling.

In sum, Plaintiff's second issue on review lacks merit.

### 3. Logical Explanation for RFC

Plaintiff's third assignment of error maintains that "the ALJ commit[ted] a reversible error by failing to provide a logical explanation for the [RFC] assessment." (Docket Entry 11 at 14 (bold font and single-spacing omitted).) In particular, Plaintiff faults the ALJ for providing "declarations[ and] not an

17

explanation" for "how he concluded, based on the evidence, that [Plaintiff] could actually perform the functional activities specified in the RFC assessment." (Docket Entry 11 at 19 (citing Tr. 25-28).) According to Plaintiff, "under the Fourth Circuit's holdings in *Thomas[ v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019),] and *Woods[ v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018)], th[e ALJ's] summary of the medical evidence is not enough to support the RFC assessment," as "a summary of medical evidence is separate from a logical explanation and [] both are required to support the RFC assessment." (Docket Entry 11 at 17.) Plaintiff's arguments fail to provide a basis for reversal or remand.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

18

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . . The [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Although the ALJ need not discuss every piece of evidence in making an RFC determination, see Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014), he or she "must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion," Woods, 888 F.3d at 694 (internal emphasis, quotation marks, and brackets omitted). Here, the ALJ's decision supplies the necessary "accurate and logical bridge," id. (internal quotation marks omitted), between his discussion of the evidence and the RFC assessment.

First, the ALJ's evaluation of the opinion evidence explains the limitations in the RFC. In that regard, the ALJ found "not persuasive" the opinions of the state agency medical consultants (Tr. 26), who limited Plaintiff to medium work with manipulative and environmental limitations (see Tr. 102-03, 118-19, 134-35, 149-50). The ALJ expressly noted that he found the consultants' opinions "inconsistent with [Plaintiff]'s treatment for uncontrolled diabetes, cervical degenerative disc disease, and

bilateral carpal tunnel syndrome and De Quervain's tenosynovitis,"
and that the opinions "d[id] not give due consideration to the
substantial symptoms experienced by [Plaintiff]." (Tr. 26.) In
accordance with that finding, the ALJ significantly reduced
Plaintiff's exertional level from medium (maximum 50 pounds
lifting, see 20 C.F.R. §§ 404.156(c), 416.967(c)) to light (maximum
20 pounds lifting, see 20 C.F.R. §§ 404.156(b), 416.967(b)), added
restrictions to frequent stooping, kneeling, crouching, crawling,
balancing, and climbing of ramps and stairs, and precluded climbing
of ladders, ropes, and scaffolds in the RFC. (See Tr. 22.)

With regard to mental limitations, the ALJ found the state
agency psychological consultants' opinions that insufficient
evidence existed to analyze Plaintiff's mental impairments from
July 1, 2012, to June 30, 2017 (see Tr. 114-15, 130-31) "not
persuasive," noting that Plaintiff's mental impairments caused her
to have "mild to moderate limitations in her ability to perform
work related abilities" (Tr. 27). Coordinately, the ALJ deemed
"generally persuasive" the state agency psychological consultants'
opinions that, from March 26, 2018 to the date of their opinions,
Plaintiff "would have mild or moderate limitations" in her mental
work-related abilities (id.; see also Tr. 96-97, 102-03, 145-46,
151-52). In accordance with those findings, the ALJ adopted the
consultants' findings that Plaintiff remained capable of simple,
routine tasks (see Tr. 22; see also Tr. 97, 103, 153), as well as

20

the reconsideration-level consultant's opinion that Plaintiff required work with "low social demands" (Tr. 153) by including a restriction to only occasional interaction with the general public (see Tr. 22).[9]

Second, the ALJ's analysis of Plaintiff's subjective symptom reporting further explains the RFC's limitations. The ALJ discussed Plaintiff's testimony regarding her physical and mental symptoms and their impact on her functioning (see Tr. 23), but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (id.). In further support of that finding, the ALJ commented on the type and effectiveness of Plaintiff's treatment, noting that, despite an orthopedist's prescription for wrist braces in December 2016 (left wrist) (see Tr. 24 (citing Tr. 661)) and July 2017 (right wrist) (see id. (citing Tr. 580)), subsequent examinations showed Plaintiff did not wear those braces (see id. (citing Tr. 575, 579, 585, 959, 998, 1338)), and that Plaintiff "reported that her wrist pain had improved since starting on vitamin D" (id. (citing Tr. 1342)), as well as that Plaintiff responded favorably to psychiatric medication (Tr. 26 (citing Tr. 903, 907, 1245, 1587)). The ALJ also noted that, despite complaints of disabling physical and mental symptoms, Plaintiff's

_____

[9] Plaintiff did not submit any opinions from treating medical providers regarding her physical or mental functional limitations.

21

daily activities included "cook[ing] a small meal," "pay[ing] bills and using a checkbook," "go[ing] to a public park to swim," "grocery shop[ping]," and "play[ing] games on her phone." (Tr. 21; see also Tr. 26 (discussing Plaintiff's report of "feeling[s] of enjoyment during recreational and leisure activities").)

Thus, contrary to Plaintiff's contentions (see Docket Entry 11 at 14-20), beyond the ALJ's narrative discussion of the objective medical evidence (which provides additional support for the ALJ's RFC) (see Tr. 23-26), the ALJ's decision also includes a review of Plaintiff's hearing testimony (see Tr. 23), observations regarding the type and effectiveness of Plaintiff's treatment (see Tr. 24, 26), analysis of Plaintiff's daily activities (see Tr. 21), and appropriate consideration of the opinion evidence in the record (see Tr. 26-27). Those components of the ALJ's decision, along with his discussion of the objective medical evidence, supply "an accurate and logical bridge," Woods, 888 F.3d at 694, between the evidence and the ALJ's RFC.

Simply put, Plaintiff's third issue on review does not warrant relief.

### 4. Over-Reliance on Objective Medical Evidence

In Plaintiff's fourth assignment of error, she asserts that "[t]he ALJ [] committed a reversible error" by "discount[ing Plaintiff]'s statements about the severity and limiting effects of her medical impairments solely because of a lack of substantiating

objective medical evidence" (Docket Entry 11 at 20 (bold font and single-spacing omitted)), in violation of SSR 16-3p, <u>Hines</u>, and <u>Arakas v. Commissioner of Soc. Sec. Admin.</u>, 983 F.3d 83 (4th Cir. 2020 (Docket Entry 11 at 20-22; <u>see also</u> Docket Entry 14 at 5-7). In that regard, Plaintiff points out that the Fourth Circuit in <u>Hines</u> "held that[,] because the claimant had 'met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [he] was entitled to rely exclusively on subjective evidence to prove . . . that his pain [wa]s so continuous and/or so severe that it prevent[ed] him from working a full eight hour day.'" (Docket Entry 11 at 21 (quoting <u>Hines</u>, 453 F.3d at 563).) Concerning <u>Arakas</u>, Plaintiff notes that the Fourth Circuit therein found that an ALJ had erred by "'referr[ing] at least five times to the supposed lack of objective medical evidence supporting [the plaintiff]'s complaints and repeatedly highlight[ing] the ways in which [the ALJ] believed [the plaintiff's] statements were inconsistent with the objective medical evidence.'" (<u>Id.</u> at 21-22 (quoting <u>Arakas</u>, 983 F.3d at 97).)

According to Plaintiff, the ALJ here found that Plaintiff's "'medically determinable impairments could reasonably be expected to cause the alleged symptoms,'" but then found "that 'the objective medical evidence of record d[id] not support the frequency, severity, or limiting effects of [Plaintiff]'s alleged

23

symptoms of impairment.'" (Id. (quoting Tr. 23).) Plaintiff further notes that "[t]he ALJ repeated that statement . . . in a paragraph explaining the findings of his physical RFC assessment" (id. at 22-23 (citing Tr. 25)), as well as "in [a] different paragraph explaining the findings of the mental RFC assessment" (id. at 23 (citing Tr. 26)). Plaintiff thus argues that "[t]he ALJ stated three times that the objective medical evidence d[id] not support [Plaintiff]'s symptom allegations[, but] he failed to state any other reason for discounting [Plaintiff]'s testimony" (id. (citing Tr. 23-26)), and therefore . . . discounted [Plaintiff]'s symptom testimony in a manner expressly prohibited by both SSR 16-3p and the Fourth Circuit's holdings in *Hines* and *Arakas*" (id.).

As an initial matter, although *Arakas* "reiterate[d] the long-standing law in [the Fourth C]ircuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms," *Arakas*, 983 F.3d at 98, long-standing cases containing the substance of that holding, such as *Craig* and *Hines* (among others), clarify that, "[a]lthough a claimant's allegations about her [symptoms] may not be discredited solely because they are not substantiated by objective evidence of the [symptoms themselves] or [their] severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that

24

impairment can reasonably be expected to cause the [symptoms] the claimant alleges []he suffers," Craig, 76 F.3d at 595 (emphasis added); see also Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595). In other words, under the appropriate circumstances, an ALJ may choose to rely exclusively on a claimant's subjective symptom reports to find disabling symptoms; however, Arakas does not compel ALJs to consider only subjective evidence, as such a requirement would conflict with the regulations, which plainly require ALJs to consider a variety of factors, including objective medical evidence, in evaluating the intensity, persistence, and limiting effects of symptoms. See 20 C.F.R. §§ 404.1529(c), 416.929(c) (directing ALJs to assess a claimant's medical history, medical signs and laboratory findings, daily activities, testimony about nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions from examining and non-examining sources); see also 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain . . . established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether [an] individual is under a disability." (emphasis added)).

Here, in compliance with Arakas, Hines, and Craig, the ALJ considered the objective medical evidence as one part of his evaluation of the intensity, persistence, and limiting effects of

25

Plaintiff's alleged physical and mental symptoms. As detailed in
the discussion of Plaintiff's third issue on review, the ALJ
additionally considered the opinion evidence of record (see Tr. 26-
27), and commented on the type and effectiveness of Plaintiff's
treatment, noting that Plaintiff did not wear her prescribed wrist
braces subsequent to visits at which her orthopedist injected
Plaintiff's wrists with steroids (see Tr. 24 (citing Tr. 575, 579,
585, 959, 998, 1338)), that Plaintiff "reported that her wrist pain
had improved since starting on vitamin D" (id. (citing Tr. 1342)),
and that Plaintiff responded favorably to psychiatric medication
(Tr. 26 (citing Tr. 903, 907, 1245, 1587)). The ALJ also noted
that, despite complaints of disabling physical and mental symptoms,
Plaintiff's daily activities included "cook[ing] a small meal,"
"pay[ing] bills and using a checkbook," "go[ing] to a public park
to swim," "grocery shop[ping]," and "play[ing] games on her phone."
(Tr. 21; see also Tr. 26 (discussing Plaintiff's report of
"feeling[s] of enjoyment during recreational and leisure
activities").)

Consistent with the ALJ's holistic consideration of the entire
record, although the ALJ did state that "[t]he objective medical
evidence of record d[id] not support the frequency, severity, or
limiting effects of [Plaintiff]'s alleged symptoms of impairment"
(Tr. 23; see also Tr. 25, 26 (reflecting similar statements by
ALJ)), the ALJ also found:

26

> In conclusion, the evidence of record <u>as a whole</u> supports
> that [Plaintiff] is restricted to less than a full range
> of light work, consistent with the above-cited physical
> [RFC], on a regular, sustained basis. Further, the
> evidence of record <u>as a whole</u> supports that [Plaintiff]
> is restricted to unskilled work, consistent with the
> above-cited mental [RFC], on a regular, sustained basis.

(Tr. 27-28 (emphasis added).) Thus, the ALJ made clear that, in the final analysis, he considered the <u>entire</u> record, and not just the objective medical evidence, in determining Plaintiff's RFC.

In short, Plaintiff's fourth issue on review does not demonstrate reversible error.[10]

### 5. Reliance on Objective Evidence of Mental Impairments

Lastly, Plaintiff contends that her MDD, GAD, and PTSD constitute "medically determinable impairments that result in entirely subjective symptoms[, and that she] is therefore entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of her mental disorder symptoms." (Docket Entry 11 at 23 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 14 at 7-10.) In particular, Plaintiff maintains that the Fourth Circuit in <u>Arakas</u> "noted that fibromyalgia is 'a

_____

[10] In Plaintiff's Reply, she asserts that the Commissioner "fail[ed] to address [Plaintiff]'s argument that the ALJ committed an error of law by discounting [Plaintiff]'s statements about the symptoms of her medical impairments solely because of a lack of substantiating objective medical evidence." (Docket Entry 14 at 5 (bold font and single-spacing omitted).) According to Plaintiff, "[t]he Court should therefore conclude that [the Commissioner] has implicitly recognized that the argument establishes that the ALJ committed a reversible legal error." (<u>Id.</u> at 7.) The Court should decline that invitation. The Commissioner sufficiently addressed Plaintiff's argument by noting that, in addition to the objective medical evidence, the ALJ considered Plaintiff's good response to psychiatric medication (Docket Entry 13 at 21 (citing Tr. 26, 481-543, 852-951, 1245-59, 1385-1601)), her inconsistent attendance at counseling (<u>id.</u> (citing Tr. 26, 852, 1423)), and her daily activities (<u>id.</u> at 21-22 (citing Tr. 21, 26, 293-300, 1605)).

disease whose symptoms are entirely subjective,'" and thus "held that the claimant 'was entitled to rely exclusively on subjective evidence to prove . . . that her symptoms were so continuous and/or severe that [they] prevent[ed] [her] from working a full eight hour day'" (Docket Entry 11 at 23-24 (quoting Arakas, 983 F.3d at 96) (internal quotation marks omitted); see also id. at 24-25 (citing Hines, 453 F.3d at 565, for proposition that claimant with sickle cell disease "was entitled to rely exclusively on subjective evidence to prove . . . that his pain [wa]s so continuous and/or severe that it prevent[ed] him from working a full eight hour day").) According to Plaintiff, "[l]ike fibromyalgia and sickle cell disease, . . . [t]here is no objective medical test to detect the presence of symptoms" of her MDD, GAD, and PTSD, and "mental health professionals diagnose the disorders by asking patients detailed questions about their symptoms." (Id. at 25 (quoting https://www.mayoclinic.org/diseases-conditions/depression/diagnosis-treatment/drc-20356013, https://www.mayoclinic.org/diseases-conditions/generalized-anxiety-disorder/diagnosis-treatment/drc-20361045, and https://www.mayoclinic.org/diseases-conditions/post-traumatic-stress-disorder/diagnosis-treatment/drc-20355973).) Plaintiff thus contends that she "is entitled to rely on her subjective testimony to prove that . . . she would have more than one work absence per month and that she would likely have anger outbursts towards a

28

supervisor or coworker at least 3 or 4 times" (Docket Entry 14 at 9-10 (referencing Tr. 66-67, 75, 77-78)), "incidents that a [VE] testified would be work preclusive" (id. at 10 (citing Tr. 84-86)). Those arguments lack merit.

The Fourth Circuit in Arakas deemed fibromyalgia "a disease whose symptoms are entirely subjective," Arakas, 983 F.3d at 96, and thus held that "ALJs may not rely on objective medical evidence (or the lack thereof) – even as just one of multiple medical factors – to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence," id. at 97 (emphasis added). Accordingly, the Court must assess whether Plaintiff's alleged symptoms of MDD, GAD, and PTSD, qualify as "entirely subjective," Arakas, 983 F.3d at 96 (internal quotation marks omitted), such that the ALJ erred in considering objective evidence in discounting the intensity, persistence, and limiting effects of those symptoms.

In that regard, Plaintiff has alleged that her mental impairments have caused her to suffer sadness, tearfulness, mood swings, anxiety, insomnia, irritability, anger outbursts, decreased attention and concentration, poor memory, lack of energy, anhedonia, and low self-esteem. (See, e.g., Tr. 66-69, 74-76, 78, 497.) Those symptoms, however, do not qualify as "entirely subjective," Arakas, 983 F.3d at 96 (internal quotation marks omitted). The record contains numerous mental status examinations

29

by Plaintiff's treating mental health providers (see Tr. 480-543, 852-951, 1245-59, 1385-1607), and such examinations contain the objective observations and testing results of mental health professionals, see Fedornak v. Commissioner of Soc. Sec., No. 8:20CV416, 2021 WL 397353, at *5 (M.D. Fla. Jan. 19, 2021) (unpublished) (classifying "mental status examinations" as "form of objective evidence" and holding that, "[w]hile psychological diagnoses will depend in part on the subjective allegations by the patient, there is no precedent for relying solely on a patient's self-reporting of psychological limitations"), recommendation adopted, 2021 WL 391268 (M.D. Fla. Feb. 4, 2021) (unpublished); Blessing v. Astrue, No. 12CV5275, 2013 WL 316153, *7 (W.D. Wash. 2013) (unpublished) ("Like the physical examination, the Mental Status Examination is termed the objective portion of the patient evaluation." (quoting Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination, 3-4 (Oxford Univ. Press 1993)); see also Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology.").

As the ALJ noted, "[i]n mental status examinations, [Plaintiff] had generally normal findings including normal orientation, typically normal attention and concentration,

30

cooperative, normal speech, logical, normal judgment, future oriented, and normal thought content." (Tr. 26 (citing Tr. 872, 885, 907, 1249-50, 1389-90, 1428-29, 1518, 1540, 1584-85, 1596).) Accordingly, unlike "fibromyalgia — a disease whose symptoms are entirely subjective," <u>Arakas</u>, 983 F.3d at 96 (internal quotation marks omitted), and unlike the chronic pain of sickle cell disease, <u>Hines</u>, 453 F.3d at 563, Plaintiff's mental health practitioners <u>objectively</u> verified through mental status examinations whether Plaintiff's MDD, GAD, and PTSD impacted her orientation, appearance, behavior, speech, thoughts, affect, concentration, attention, memory, judgment, and insight. As such, the ALJ did not err in relying, in part, on objective evidence to discount the intensity, persistence, and limiting effects of Plaintiff's alleged mental symptoms.

Accordingly, Plaintiff's fifth and final issue on review fails to establish prejudicial error.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing the Decision of the Commissioner of Social

31

Security (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

March 1, 2022